J-S02033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JARON AMBROSE | |
| Appellant | No. 2227 EDA 2015 |

Appeal from the Order June 26, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008198-2011

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, J., and MOULTON, J.

MEMORANDUM BY MOULTON, J.:                    **FILED AUGUST 03, 2017**

Jaron Ambrose appeals from the June 26, 2015 order entered in the Philadelphia County Court of Common Pleas dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. We affirm.

The PCRA court comprehensively set forth the factual and procedural history of this case in its June 26, 2015 order and opinion, which we adopt and incorporate herein.  *See* Order and Opinion, 6/26/15, at 1-3 ("PCRA Ct. Op.").

Ambrose filed the instant PCRA petition, *pro se*, on January 31, 2014. On March 13, 2015, appointed PCRA counsel filed an amended petition.  On May 28, 2015, the PCRA court sent notice of its intent to dismiss Ambrose's petition pursuant to Pennsylvania Rule of Criminal Procedure 907.  On June

11, 2015, Ambrose filed a response letter originally addressed to PCRA counsel. On June 26, 2015, the PCRA court dismissed the petition. Thereafter, Ambrose filed a timely notice of appeal.[1]

Ambrose raises the following issues on appeal:

> Did the trial court err when it denied [Ambrose] post-conviction relief in the form of a new trial based on the ineffectiveness of trial counsel and after-discovered evidence in the absence of an evidentiary [hearing]?[2]
>
> A. Is [Ambrose] entitled to a new trial or a remand for an evidentiary hearing since trial counsel was ineffective when he abdicated his responsibility as counsel to make legal determinations that were in the best interest of [Ambrose] by failing to request a mistrial after a juror was approached by a member of the deceased victim's family?
>
> B. Is [Ambrose] entitled to a new trial or a remand for an evidentiary hearing since appellate counsel was ineffective for arguing in the direct appeal that the trial court should have *sua sponte* declared a mistrial?
>
> C. Is [Ambrose] entitled to a new trial or a remand for an evidentiary hearing since trial counsel was ineffective when he failed to file and litigate a motion to suppress identification?

---

[1] On November 23, 2015, Barnabay C. Wittels, Esquire, who was Ambrose's PCRA counsel, entered his appearance in the instant appeal. Thereafter, he filed an application to withdraw as counsel, which this Court denied on February 2, 2016. On February 10, 2016, Attorney Wittels filed an application for reconsideration of the Court's order. On April 18, 2016, this Court denied the application without prejudice to Attorney Wittels' right to apply to the PCRA court for the requested relief. On May 6, 2016, the PCRA court appointed Mitchell S. Strutin, Esquire, to represent Ambrose.

[2] We will not address separately this introductory issue, as it merely summarizes the remaining issues Ambrose has raised on appeal.

D. Is [Ambrose] entitled to a new trial or a remand for an evidentiary hearing since trial counsel was ineffective when he failed to conduct a pretrial investigation?

E. Is [Ambrose] entitled to a new trial or a remand for an evidentiary hearing since trial counsel was ineffective when he failed to request DNA testing be performed on the gun retrieved, the fired cartridge casings and the magazine?

F. Is [Ambrose] entitled to a new trial or a remand for an evidentiary hearing as a result of after-discovered evidence based upon misconduct allegations against Detectives James Pitts and Ohmarr Jenkins?

G. Is [Ambrose] entitled to a new trial or a remand for an evidentiary hearing since PCRA counsel was ineffective for failing to raise in the amended PCRA petition trial counsel's ineffectiveness for failing to object to the admissibility of [Ambrose]'s Facebook photo as a denial of [Ambrose]'s right to confrontation since the photo was not authenticated?

H. Is [Ambrose] entitled to a new trial or a remand for an evidentiary hearing since PCRA counsel was ineffective for failing to raise in the amended PCRA petition trial counsel's ineffectiveness for failing to object to the Commonwealth's introduction of inadmissible hearsay?

I. Is [Ambrose] entitled to a new trial or a remand for an evidentiary hearing since PCRA counsel was ineffective for failing to raise in the amended PCRA petition the issue of the prosecutor's misconduct for failing to disclose DNA testing which was conducted by Police Officer Edward Fidler and trial counsel's ineffectiveness for failing to investigate and raise this issue at trial?

Ambrose's Br. at 4-6.

Our standard of review from the denial of PCRA relief "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa.Super. 2011).

- 3 -

Further, "[t]he right to an evidentiary hearing on a post-conviction petition is not absolute." **Commonwealth v. Jordan**, 772 A.2d 1011, 1014 (Pa.Super. 2001). If a claim is "patently frivolous and is without a trace of support in either the record or from other evidence[,]" a PCRA court may decline to hold an evidentiary hearing. **Id.** "[O]n appeal, [this Court] must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and denying relief without an evidentiary hearing." **Id.**

Ambrose's first five issues (A through E) raise claims for ineffective assistance of his counsel. When analyzing ineffectiveness claims, we begin with the presumption that counsel was effective. **Commonwealth v. Spotz**, 18 A.3d 244, 259-60 (Pa. 2011). "[T]he defendant bears the burden of proving ineffectiveness." **Commonwealth v. Ligons**, 971 A.2d 1125, 1137 (Pa. 2009). To overcome the presumption of effectiveness, a PCRA petitioner must demonstrate that: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." **Id.** "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." **Id.**

In Ambrose's first issue, he argues that his trial counsel was ineffective for failing to move for a mistrial after a member of the victim's family spoke to a juror during a lunch break prior to closing arguments.

Our Supreme Court has stated:

> [T]he remedy of a mistrial is an extreme one. . . . It is primarily within the trial court's discretion to determine whether Appellant was prejudiced by the event that forms the substance of the motion. Finally, it must be remembered that a mistrial is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial.

*Commonwealth v. Lease*, 703 A.2d 506, 508 (Pa.Super. 1997) (quoting

*Commonwealth v. Montgomery*, 626 A.2d 109, 112-13 (Pa. 1993)).

On direct appeal, Ambrose claimed the trial court erred in failing to declare a mistrial *sua sponte*.[3] We concluded the trial court did not err, reasoning:

> Here, the trial court dismissed the juror who was actually approached and thoroughly interviewed every other juror with regard to what he or she may or may not have heard. Moreover, each juror testified unequivocally that he or she could render a fair and impartial verdict. Moreover, [Ambrose] was colloquied and elected to proceed. Accordingly, we conclude that the trial court did not abuse its discretion when it did not grant a mistrial *sua sponte* as there was no manifest necessity to do so.

---

[3] Because a claim of ineffectiveness "raises a distinct issue for purposes of the PCRA," *Commonwealth v. Collins*, 888 A.2d 564, 573 (Pa.2005), we conclude that this claim for ineffective assistance of counsel is not barred for having been previously litigated.

*Commonwealth v. Ambrose*, No. 698 EDA 2013, unpublished memorandum at 6 (Pa.Super. filed Dec. 4, 2013). Accordingly, because we previously concluded that a mistrial was not necessary, the underlying claim of Ambrose's first issue lacks arguable merit. The PCRA court therefore did not err in finding that Ambrose's trial counsel was not ineffective.

In his second issue, Ambrose contends that his appellate counsel was ineffective for arguing on direct appeal that the trial court should have *sua sponte* declared a mistrial in light of the contact between the juror and family member. Ambrose claims that appellate counsel "should never have made this argument." Ambrose's Br. at 24. Rather, Ambrose argues that the decision to request a mistrial lay with trial counsel, and not with Ambrose himself or the trial court. Because we previously concluded that a mistrial was not necessary, the underlying claim lacks arguable merit. Further, there is no merit to the argument that only counsel could have requested a mistrial. *Cf. Commowealth v. Kelly*, 797 A.2d 925, 936 (Pa.Super. 2002) ("It is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision."). Accordingly, Ambrose cannot show that he was prejudiced by appellate counsel's performance. Thus, we conclude that appellate counsel was not ineffective.

Ambrose next argues that his trial counsel was ineffective for failing to file a motion to suppress identification testimony from a Commonwealth

witness, Shaquita Morton. The PCRA court concluded that Ambrose's underlying claim, that Morton's identification testimony should have been suppressed, had no arguable merit, and thus, counsel was not ineffective for failing to file a motion to suppress. After our review of the certified record, the parties' briefs, and the relevant law, we conclude the PCRA court did not err for the reasons stated in the PCRA court's opinion, which we adopt and incorporate herein. *See* PCRA Ct. Op. at 6-9.

Ambrose next argues that his trial counsel was ineffective for failing to conduct a pretrial investigation. Ambrose claims that "[t]here is no evidence that trial counsel hired an investigator, sought out witnesses or did anything other than react to the discovery provided to him by the Commonwealth." Ambrose's Br. at 27.

We first examine the part of Ambrose's claim regarding trial counsel's alleged failure to investigate witnesses.

> To demonstrate the arguable merit of [an] underlying claim that his trial counsel was ineffective in failing to present additional witnesses, Appellant must establish the existence of and the availability of the witnesses, counsel's actual awareness, or duty to know, of the witnesses, the willingness and ability of the witnesses to cooperate and appear on the defendant's behalf and the necessity for the proposed testimony in order to avoid prejudice. Moreover, Appellant must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case.

*Commonwealth v. Gibson*, 951 A.2d 1110, 1133–34 (Pa. 2008) (citations and internal quotation omitted).

At trial, after Ambrose's counsel informed the court that he did not intend to present any testimony or evidence on Ambrose's behalf, and that Ambrose did not intend to testify, the court colloquied Ambrose. The following exchange occurred:

> THE COURT: The first thing is, I know you have been communicating with [your counsel] Mr. Joseph and consulting with him and he's been talking with you as he examined witnesses. So the first question I have to you, when he makes the representation that he has no testimony to present or witnesses to present, are you in agreement with that decision?
>
> [AMBROSE]: Yes.
>
> THE COURT: Is there anyone that you want him to call or subpoena to court and they have not arrived?
>
> [AMBROSE]: No.
>
> THE COURT: Are you comfortable in that decision that you have had enough time speak with your attorney and he's answered all of your questions?
>
> [AMBROSE]: Yes.

N.T., 12/6/12, at 84-85. In addition, Ambrose failed to identify the witnesses he believes counsel failed to investigate,[4] either in his amended PCRA petition[5] or in his appellate brief. Therefore, we agree with the PCRA

_____

[4] In his amended PCRA petition, Ambrose alleged that trial counsel also failed to interview and call alibi witnesses. Amend. PCRA Pet. at 10. He also averred that PCRA counsel was awaiting information from Ambrose regarding the witnesses for the purpose of obtaining affidavits. *Id.* at n.1. The certified record does not contain any such affidavits.

[5] In his original *pro se* PCRA petition, Ambrose listed Shikeda Johnson as a potential witness. However, Johnson testified at trial, N.T., 12/5/12, at
*(Footnote Continued Next Page)*

court that trial counsel was not ineffective for allegedly failing to investigate witnesses.

We also conclude that Ambrose's claim trial counsel was ineffective for failing to hire an investigator or for failing to do "anything other than react" to the Commonwealth's discovery likewise does not warrant relief. Ambrose cites no legal authority obligating trial counsel to hire an investigator, nor is this Court aware of such a duty; thus, the underlying claim is without merit. The case on which Ambrose relies for his claim that counsel did nothing but react to the Commonwealth's discovery, *Von Moltke v. Gillies*, 332 U.S. 708 (1948), is irrelevant and contains no support for his claim. Thus, we conclude that the underlying claim lacks merit.

*(Footnote Continued)* —————————————

25-68, and the certification attached to Ambrose's *pro se* petition indicates that Johnson's proposed testimony would support Ambrose's after-discovered evidence claim, not a claim based on counsel's alleged failure to investigate witnesses.

Additionally, according to the PCRA court, in Ambrose's response to the court's Rule 907 notice, which is not part of the certified record, Ambrose identified an unknown United States mail carrier as a potential witness. PCRA Ct. Op. at 14-15. The PCRA court states that this witness was presumably Elizabeth Gilbert. *Id.* at 14. Detective James Pitts testified at trial that someone contacted Gilbert several days after the crime to inquire whether she was the mail carrier for the street on which the crime occurred. N.T., 12/5/12, at 56. Later, Gilbert's supervisor contacted Detective Pitts, informing him that Gilbert no longer wanted to be involved in the case, was afraid, and had indicated that "she could never identify anyone and was ultimately moved off that route." *Id.*

Ambrose next argues that his trial counsel was ineffective for failing to request DNA testing on the recovered gun, fired cartridge casings, and gun magazine. At a pre-trial hearing on November 29, 2012, Ambrose expressly declined DNA testing of the murder weapon and waived his right to "later claim that there is possible DNA evidence that could exonerate" him. N.T., 11/29/12, at 7. As the trial court stated, "[I]n other words, if you were to be convicted, you can't later say I want a new trial because the DNA testing was never done." *Id.* Our Supreme Court has stated that counsel cannot be deemed ineffective for acting in conformity with his or her client's instructions. *Commonwealth v. Chmiel*, 889 A.2d 501, 546 (Pa. 2005). Accordingly, we agree with the PCRA court's conclusion that counsel was not ineffective for the reasons stated in the PCRA court's opinion, which we adopt and incorporate herein. *See* PCRA Ct. Op. at 15-18.

In Ambrose's sixth issue, he contends that he is entitled to a new trial based on after-discovered evidence of the alleged misconduct of two detectives involved in Ambrose's case. A PCRA petitioner may be eligible for relief if he pleads and proves by a preponderance of the evidence that his conviction resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543 (a)(2)(vi). To establish a right to a new trial based on after-discovered evidence:

appellant must show the evidence: 1) has been discovered after trial and could not have been obtained at or prior to the conclusion of trial by the exercise of reasonable diligence; 2) is not merely corroborative or cumulative; 3) will not be used solely to impeach a witness's credibility; and 4) is of such a nature and character that a different verdict will likely result if a new trial is granted.

***Commonwealth v. Cousar***, 154 A.3d 287, 311 (Pa. 2017). Ambrose argues that the detectives' misconduct was documented in a November 5, 2013 newspaper article that was attached to Ambrose's *pro se* PCRA petition. Ambrose's Br. at 30.

The Supreme Court addressed a similar argument in ***Commonwealth v. Castro***, 93 A.3d 818 (Pa. 2014). In ***Castro***, the Court concluded that the newspaper article in that case was not evidence[6] for purposes of the

---

[6] The Court explained why the article was not evidence:

We need not belabor the question of whether a newspaper article is evidence – the parties agree the article itself is not evidence.[11] The Superior Court erred in treating the article as containing evidence; the article contains allegations that suggest such evidence may exist, but allegations in the media, whether true or false, are no more evidence than allegations in any other out-of-court situation. Nothing in these allegations, even read in the broadest sense, can be described as "evidence," and references to the officer being under investigation for misconduct contains no information regarding what evidence existed to substantiate this averment. One cannot glean from these bald allegations what evidence of misconduct appellee intended to produce at the hearing. As the articles themselves were not evidence, much less sufficient evidence, we instead focus on whether the

*(Footnote Continued Next Page)*

- 11 -

appellant's post-sentence motion for a new trial based on after-discovered evidence. *Id.* at 826. Moreover, because the newspaper article represented the reporter's version of what he or she had been told by another person, the Court found that it was double hearsay. *Id.* The Court distinguished *Castro* from *Commonwealth v. Brosnick*, 697 A.2d 725 (Pa. 1992), in which the Court remanded for a new trial. In *Brosnick*, the appellant, who had been convicted of driving under the influence, learned from a newspaper article that the Pennsylvania Auditor General was investigating "the company that manufactured items used to test the accuracy of breath-testing machines. The ensuing report [from the Auditor General] attacked the credibility of the machines' certificates of accuracy." *Id.* at 826–27. The appellant then moved for a new trial, citing the report rather the newspaper article. *Id.* at 827. The *Castro* Court found that, unlike *Brosnick*, there was no "end product here, no published report, no findings made, no charges filed." *Id.* It concluded that "[w]hile newspaper articles can alert a party to the possible existence of evidence, the party must do more than

*(Footnote Continued)* ———————————

information described in the March 30 article can otherwise serve as the basis for appellee's claim.

[11] This Court and the Commonwealth and Superior Courts have held newspaper articles generally do not constitute evidence, as they contain inadmissible hearsay.

*Castro*, 93 A.3d at 825–26 (internal citations omitted).

attach the article as establishing the evidence that will meet the four-pronged test." *Id.*

Ambrose contends that because the detectives involved in his case have been removed from their positions and because "some of the convictions in cases in which they were involved" have been overturned, "[t]his calls into question the propriety of the investigation and the tactics employed and utilized to obtain witness statements and identification." Ambrose's Br. at 32. Ambrose baldly asserts that "[i]n the instant matter, witnesses were prepared to testify that they were pressured, intimidated and threatened into giving inculpatory statement[s] and testimony against" him, *id.*; notably, however, in his brief he does not identify any of the witnesses. As stated above, in his *pro se* PCRA petition, Ambrose asserted that Shikeda Johnson could testify as to possible police misconduct in relation to this matter. Specifically, Johnson would testify that she gave statements to police and testified because "she was pressured, intimidated, [and] possibly threatened" by Detective Pitts and "possibly Robyn Alston[.]" PCRA Pet. at 7. However, Ambrose has failed to established that "the evidence was discovered after trial and could not have been obtained at or prior to the conclusion of trial by the exercise of reasonable diligence." *Cousar*, 154 A.3d at 311.

At trial, Johnson testified as follows:

> Q. Did [the police] say that they were going to take [your] child from you?

A. Yeah. They were threatening me.

Q. Is that why you gave the statement?

A. No. They asked me questions and I answered them. But this right here is not what I'm saying. He put extra stuff in here.

Q. So what's the extra stuff that he put in?

A. The big paragraph right here.

Q. You didn't say any of that?

A. No. He put it in his words. That's not how I put it in mind.

N.T., 12/5/12, at 58. Johnson further testified that although she was asked to review her statement for accuracy and then sign it, which she did, she was "trying to sign it and go get [her] child." *Id.* at 65. She testified that a police officer told her that the quicker she signed her statement, the quicker she could "get out to be with [her] child." *Id.* at 67. Ambrose does not explain why any testimony regarding possible police misconduct could not have been obtained before the conclusion of trial by the exercise of reasonable diligence. Therefore, Ambrose is not entitled to relief on his after-discovered evidence claim.

Additionally, we conclude that Ambrose's last three issues, which claim ineffectiveness of PCRA counsel, cannot be reviewed for the first time on appeal. *See Commonwealth v. Henkel*, 90 A.3d 16, 20, 30 (Pa.Super. 2014) (*en banc*) (holding that "claims of PCRA counsel's ineffectiveness may not be raised for the first time on appeal" and that such claims are unreviewable); *Commonwealth v. Ford*, 44 A.3d 1190, 1201 (Pa.Super.

- 14 -

2012) (holding that "absent recognition of a constitutional right to effective collateral review counsel, claims of PCRA counsel ineffectiveness cannot be raised for the first time after a notice of appeal has been taken from the underlying PCRA matter").

Finally, because there were no genuine issues of material fact, we conclude that the PCRA court properly dismissed Ambrose's PCRA petition without an evidentiary hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/3/2017

**IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA     :   CP-51-CR-0008198-2011

             v.                             :   698 EDA 2013
                                      :   2227 EDA 2015

JARON AMBROSE                     :

**FILED
JUN 26 2015**

**Criminal Appeals Unit
First Judicial District of PA**

**ORDER AND OPINION**

**McDermott, J.**                                                 **June 26, 2015**

CP-51-CR-0008198-2011 Comm. v Ambrose, Jaron
Order and Opinion

7315911911

**Procedural History**

        On February 10, 2011, the Petitioner, Jaron Ambrose, was arrested and charged with

Murder, Attempted Murder, Conspiracy, and related charges. On December 3, 2012, the

Petitioner appeared before this Court and elected to be tried by a jury. On December 7, 2012, the

jury returned a verdict of guilty for First-Degree Murder, Aggravated Assault, Firearms Not to

Be Carried Without a License, Possessing Instrument of Crime, and Conspiracy. On February

14, 2013, this Court imposed concurrent terms of imprisonment of life without the possibility of

parole for First-Degree Murder, 10 to 20 years for Conspiracy, 5 to 10 years for Aggravated

Assault, and 12 to 24 months for Firearms Not To Be Carried without License and Possessing

Instrument of Crime, respectively.

        On March 5, 2013, Petitioner filed a timely Notice of Appeal. On March 11, 2013, this

Court issued an order pursuant to Pa.R.A.P. 1925(b). On April 3, 2013, after the time period

under the 1925(b) order had elapsed, Petitioner filed a Petition Seeking Permission to File

Statement of Matters Complained of on Appeal *Nunc Pro Tunc* and attached a Statement of



Matters Complained of on Appeal. On April 16, 2013, this Court granted the Petition and accepted the Statement as timely filed.

On appeal, Petitioner's lone issue was that this Court erred in failing to declare a mistrial *sua sponte* after being informed that a member of the decedent's family approached a juror. On December 4, 2013, the Superior Court of Pennsylvania affirmed Petitioner's judgment of sentence. No Petition for Allowance of Appeal was filed.

On January 31, 2014, Petitioner filed a *pro se* Post-Conviction Relief Act ("PCRA") Petition and a Request to Proceed *pro se*. On August 25, 2014, a *Grazier* hearing was held, where Petitioner withdrew his Request to Proceed *pro se* and was appointed PCRA counsel. On March 13, 2015, PCRA counsel filed an Amended PCRA Petition. On May 27, 2015, the Commonwealth filed a response. On May 28, after hearing argument, this Court filed its Notice to Dismiss pursuant to Pa.R.Crim.P. 907. On June 11, Petitioner filed a response letter, originally addressed to PCRA counsel, raising two issues, one of which was previously raised in his *pro se* petition.

**Facts**

The facts, as determined by this Court in its April 25, 2013, 1925(a) Opinion, are as follows:

> At approximately 1:45 on the afternoon of July 1, 2010, police were called to 4920 North Marvine Street in Philadelphia, where two men had been shot. N.T. December 4, 2012, pp. 69–71. One of the men, Derrick Holley, was pronounced dead later that afternoon, after having been transported to a hospital. *Id.* at 72–73. Keith Gilbert was wounded but survived the ordeal. While securing the crime scene, police found a semiautomatic handgun with an extended-capacity clip in a trash receptacle on Ruscomb Street. *Id.* at 92.
> Shaquita Morton, who lived at 4920 North Marvine Street at the time of the shooting, saw the defendant and a second man approach her porch area, and then saw the defendant shoot Holley

2

and Gilbert as they sat on the steps in front of her and her neighbor's houses. When the defendant pointed his gun at her, she ran inside her house. She saw the defendant run north toward Ruscomb Street. Shortly before the shooting, she had seen the defendant and an unidentified male walk by her porch area. *Id.* at 114–24.

Later that night, some individuals from the neighborhood, including Holley's cousin, Robin, were assembled at a vigil. Someone there showed Morton a picture of the defendant on Facebook, and Morton identified him as the shooter. When she was re-interviewed by homicide detectives, she picked the defendant's photograph out of an eight-person photo array. *Id.* at 138–54.

A firearms expert determined that spent shell casings found at the scene of the shooting matched the handgun found in the trash receptacle, a Glock-17. N.T. December 5, 2012, p. 78. Detective Richard Harris testified that he had attempted to find Keith Gilbert, but that he had been unable to secure his attendance at trial. N.T. December 6, pp. 75–80.

During trial, this Court received information from Juror 9 that a relative of the decedent had approached her during a lunch break at the Reading Terminal Market, located one block from the Criminal Justice Center. The relative, later identified as Nikia Alston, told Juror 9 "I need you to stop falling asleep and make this a guilty verdict." *Id.* at 95.[1] Juror 9 was excused and replaced by an alternate, and the defense elected not to request a mistrial after this Court conducted a colloquy. *See* N.T. December 6, 2012, pp. 146–48. This Court colloquied each juror individually, with special attention to two jurors who had witnessed the unfortunate interaction, and with the agreement of all parties, proceeded with the rest of the trial.[2]

**Issues**

Petitioner asserts that trial counsel was ineffective and raises the following issues:

a.  Trial counsel failed to file and litigate a motion to suppress regarding the

identification of the Petitioner;

---

[1] No evidence indicated that Juror 9 or any other juror had been sleeping or otherwise inattentive during trial. N.T. 12/06/2012 at 96, 261.

[2] Ms. Alston pled guilty to Aggravated Jury Tampering (42 Pa.C.S. § 4583.1(a)(1)) and was sentenced to two years of probation. *See* CP-51-CR-0000930-2013.

b. Trial counsel was ineffective for abdicating his responsibility as counsel to make legal determinations that were in the best interests of his client, in that it was not Petitioner's role as Defendant to make a decision on whether to move for a mistrial after a jury member was approached by an individual connected with the victim who urged that juror to render a guilty verdict;

c. Trial counsel was ineffective for arguing on appeal that the trial court should have *sua sponte* declared a mistrial when it was counsel's obligation alone to make a legal determination as to whether to move for a mistrial;

d. Trial counsel failed to conduct an investigation, in that trial counsel failed to hire an investigator to seek out witnesses;

e. Trial counsel failed to interview and call alibi witnesses;

f. Trial counsel was ineffective for not requesting that DNA testing be performed on the gun retrieved, the fired cartridge casings, and the magazine;

g. Petitioner claims that after-discovered or newly discovered evidence in the form of newspaper articles assert that detectives James Pitts and Ohmarr Jenkins were guilty of wide-spread misconduct including, but not limited to, the coaching of witnesses and fabrication of evidence; and

h. Petitioner asserts that he is entitled to relief on the grounds of actual innocence. Petitioner alleges that his claims are also cognizable under the traditional and timely honored tenets of *habeas corpus* law.

A PCRA petition must be filed no more than a year after the judgment becomes final. 42 Pa.C.S. § 9545(b)(1). A judgment is final for purposes of the PCRA "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the

4

Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). The PCRA's time limit is jurisdictional, meaning untimely petitions may not be addressed even if couched in terms of ineffectiveness. *Commonwealth v. Yarris*, 731 A.2d 581, 586 (Pa. 1999). Since Petitioner's judgment of sentence was finalized on January 3, 2014, his January 31, 2014 Petition is timely filed. *See* 42 Pa.C.S. § 9545(b)(1).

## Ineffective Assistance of Counsel

To obtain relief based on a claim of ineffective assistance of counsel, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006); 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed, however, to have rendered effective assistance. *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013).

To overcome this presumption, the Petitioner has to satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test applies by looking to three elements—whether: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, i.e., that there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Bennett*, 57 A.3d 1185, 1195–96 (Pa. 2012) (*citing Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). Failure to satisfy any prong of this test for ineffectiveness will require rejection of the claim. *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. Super. 2003). If a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first. *Bennett*, 57 A.3d at 1196.

5

A sufficient ineffectiveness claim must also contain more than boilerplate assertions. *Commonwealth v. Simmons*, 804 A.2d 625, 639 (Pa. 2001). The Supreme Court has held that "[m]ere boilerplate assertions . . . are inadequate to prove the effective denial of the right to counsel necessary to warrant PCRA relief." *Id.* Boilerplate allegations are inadequate to meet the affirmative burden to rebut the presumption that counsel was competent and effective. *Commonwealth v. Bond*, 819 A.2d 33 (Pa. 2002). Generally, boilerplate assertions fail because they are undeveloped. *Commonwealth v. Jones*, 815 A.2d 598 (Pa. 2002).

In the case at bar, Petitioner asserts that trial counsel was ineffective for failing to file and litigate a Motion to Suppress regarding the identification of the Petitioner. This claim is baseless as not only were the circumstance of the witness's observation of the suspect conducive to a reliable identification, Petitioner shows no evidence that the Facebook photograph shown to the witness prior to the police photo spread made the identification procedure in any way unduly suggestive.

Failure to file a suppression motion is ineffectiveness of counsel only when such a motion is of arguable merit. *Commonwealth v. Wayne*, 720 A.2d 456 (Pa. 1998). The "purpose of a suppression order regarding exclusion of identification evidence is to prevent improper police action. Thus, where a defendant does not show that improper police conduct resulted in a suggestive identification, suppression is not warranted." *Commonwealth v. Sanders*, 42 A.3d 325, 332 (Pa. Super. 2012).

A photographic identification is only unduly suggestive if, under the totality of the circumstances, the identification procedure creates a substantial likelihood of misidentification. *Commonwealth v. Harris*, 888 A.2d 862, 866 (Pa. Super. 2005). If a suggestive identification is

6

found, the analysis does not end there as the suggestive nature is then weighed against the following factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Commonwealth v. Fisher.* 769 A.2d 1116, 1128 (Pa. 2001). Here, Shaquita Morton had ample opportunity to view the suspect at the time of the crime. Morton testified that before the shooting, she saw the Petitioner and another male walk by as she sat on the front porch of her home. Morton stated that the Petitioner was the taller of the two males and wore brown Adidas sweatpants, a white t-shirt, and boots, which she found odd because it was a July day. She also testified that nothing obscured the Petitioner's face when she observed him. N.T. 12/04/2012 at 114–36.

At the time of the shooting, Morton testified that she witnessed the Petitioner, as he stood five feet from her, shoot the victim. She saw the victim try to block a shot with his right hand before going to the ground. Just after firing his weapon, the suspect pointed his gun at Morton, causing her to run in fear into her home. *Id.*

In addition to the more than adequate opportunity to observe the Petitioner, Morton also paid a high-degree of attention at the time of the crime. Her degree of attention is evident by the detailed description she provided to detectives. Immediately after the shooting, Morton gave police a thorough description of the suspect, including a detailed description of his clothes (brown Adidas sweat pants, white t-shirt, and boots), height (approximately 6 feet), weight (130 lbs.), skin complexion (light brown skin), age (18–25), muscular build, and haircut style (low cut). *Id.* at 129–36. This description is accurate of the Petitioner. N.T. 12/06/2012 at 69–72.

7

Further, Morton's level of certainty that the Petitioner is the shooter is unmistakable. Since the shooting, Morton has stayed consistent and never wavered in her identification of Petitioner as the shooter. From the day of the shooting up until trial, Morton positively identified the Petitioner as the shooter on four separate occasions. First, on the day of the shooting, Morton was shown a Facebook photograph by a friend—not police—of the Petitioner, where she positively identified him as the shooter.

On January 24, 2011, six months after the shooting, Morton met with detectives and again positively identified the Petitioner as the shooter after reviewing a photo spread consisting of eight photographs. In that identification, none of the detectives suggested to Morton that the suspect was in the photo spread; nor did any of the detectives suggest to her which photograph to select. After selecting the Petitioner's photograph, she circled and signed it. Morton later testified at trial she was certain that the male she selected in that photo spread shot the victim. *Id.* at 145–58.

The same day, after Morton selected the Petitioner from the photo spread, the detectives showed Morton a Facebook photograph of the Petitioner. Once more, she identified the Petitioner as the shooter and signed and dated the photograph. Finally, Morton positively identified the Petitioner as the shooter at the preliminary hearing. *Id.* at 147–48, 151–56.

For the foregoing reasons, Petitioner's claim is baseless. When considering the totality of the circumstances, nothing was unduly suggestive about the identification procedure. Even if the Facebook photograph shown by a friend before the police photo spread was unduly suggestive, the circumstances of the witness's observations of the suspect were still conducive to a reliable identification. The witness had ample opportunity, in close proximity, to observe the suspect; gave a detailed and accurate description; paid a high-degree attention; and identified the suspect

8

from a photograph within hours of the crime. If trial counsel, therefore, had moved to suppress the identification of the Petitioner, it surely would have been denied. Thus, because the underlying claim has no arguable merit, trial counsel was not ineffective for failing to file a Motion to Suppress.

Petitioner also claims that trial counsel was ineffective for not overriding his decision to proceed with the trial and move for a mistrial after one of the victim's relatives approached a juror. This claim, however, is unsupportable as the underlying claim lacks arguable merit—no evidence in the instant matter supports the need for a mistrial.

For his position that counsel was ineffective for not overriding his decision to proceed with the trial, Petitioner relies heavily on *United States v. Chapman*, 593 F.3d 365 (4th Cir. 2010). *Chapman*, a Fourth Circuit opinion, holds that mistrial decisions are entrusted to counsel, not the client. In *Chapman*, counsel for Chapman objected to a reference made during closing arguments. Chapman's counsel moved for a mistrial with prejudice, but the trial court only offered a mistrial *without* prejudice. Chapman's counsel declined the offer and the trial continued. On appeal, Chapman maintained that he had directed counsel to accept the court's offer. Chapman asserted that by rebuffing his instructions, counsel was ineffective. *Id.*

There, the Court of Appeals held that trial counsel was in a better position to make the decision to reject the court's offer; thus, counsel was not ineffective. *Id.* at 368. The court relied, in large part, on *United Sates v. Washington*, 198 F.3d 721 (8th Cir. 1999), which reasoned that mistrial requests are tactical decisions, delegated to trial counsel because counsel generally has to make these decisions in a split-second, while contemplating "numerous alternative strategies," which a layperson could not do. *Chapman*, 593 F.3d 368; *see also Washington*, 198 F.3d 721.

*Chapman*, however, is not on point in this case as *Chapman* supports the proposition that had trial counsel *disagreed* with Petitioner, he was still free to request a mistrial. *See Chapman, supra.* Yet, here, no evidence suggests that trial counsel disagreed with Petitioner's decision to proceed with the current trial. In fact, before conferring with his client, trial counsel stated that he was not going to request a mistrial:

> TRIAL COUNSEL: Do you want to colloquy the defendant on —
>
> THE COURT: Why don't you talk to him.
>
> TRIAL COUNSEL: I'm not going to make an objection and ask for a mistrial.
>
> THE COURT: Talk to him about it. You should talk to him first. . . .

N.T. 12/06/2012 at 146. Trial counsel's above-statement came after he observed the measures taken by this Court concerning the approached juror. This Court dismissed the approached juror—with agreement of counsel—and colloquied each remaining juror to make certain he or she could continue to serve and render an impartial verdict. Trial counsel participated in that hearing, and was free to supplement this Court's colloquy of each juror with questions of his own.

As *Chapman* holds, the decision whether to move for a mistrial was in trial counsel's hands. *See Chapman, supra.* The record here reflects that trial counsel, after viewing the measures taken by this Court, made a strategic decision not to request one. Where trial counsel makes a strategic decision after a thorough investigation of law and facts, that decision is virtually unchallengeable as ineffective assistance of counsel. *Commonwealth v. Basemore*, 744 A.2d 717 (Pa. 2000).

The evidence here also suggests that Petitioner agreed with that decision. After the jurors were colloquied, and after trial counsel stated that he was not going to ask for a mistrial, trial

10

counsel and Petitioner conferred privately; soon thereafter, Petitioner was colloquied and expressed that he wished for the trial to proceed:

> THE COURT: Before we proceed, Mr. Ambrose, you have had an opportunity to discuss with your attorney something concerning a juror?
>
> DEFENDANT: Yes.
>
> THE COURT: You understand juror number nine has been released?
>
> DEFENDANT: Yes.
>
> THE COURT: And we can have a longer discussion about it later. But it's my understanding at this point you agree with counsel to proceed with this trial. So we're going to substitute juror number 13 for juror number nine. Do you understand that?
>
> DEFENDANT: Yes.
>
> THE COURT: And that your attorney discussed one of the possibilities of asking for a mistrial?
>
> DEFENDANT: Yes.
>
> THE COURT: And is this your decision to proceed with this jury panel?
>
> DEFENDANT: Yes.

N.T. 12/06/2012 at 146–48. *Chapman* is therefore not applicable as trial counsel made a strategic decision—which Petitioner agreed with—not to move for a mistrial. Thus, trial counsel was not ineffective for not overriding Petitioner's decision to proceed with the trial.

Even if the Petitioner alone made the decision, this claim is still baseless because the underlying claim lacks arguable merit as no evidence supports the need for a mistrial. A mistrial is an extreme remedy. *Commonwealth v. Bracey*, 831 A.2d 678, 682 (Pa. Super. 2003). Before declaring a mistrial, a trial court must consider less drastic alternatives. *Commonwealth v. Kelly*, 797 A.2d 925, 936 (Pa. Super. 2002). The decision whether to declare a mistrial *sua sponte*,

11

upon the showing of manifest necessity, is within the sound discretion of the trial judge and will not be reversed absent a flagrant abuse of discretion. *Commonwealth v. Walker*, 954 A.2d 1249 (Pa. Super. 2008); *Commonwealth v. Cottam*, 616 A.2d 988 (Pa. Super. 1992).

Instantly, after learning the juror was approached, this Court took appropriate measures and considered all alternatives in deciding that a mistrial was unnecessary and that lesser measures would still ensure a fair trial. The Superior Court reviewed the measures taken by this Court and affirmed this Court's conclusion that no basis existed to grant a mistrial *sua sponte*:

> Here, the trial court dismissed the juror who was actually approached and thoroughly interviewed every other juror with regard to what he or she may or may not have heard. Moreover, each juror testified unequivocally that he or she could render a fair and impartial verdict. Moreover, [the defendant] was colloquied and elected to proceed. Accordingly, we concluded that the trial court did not abuse its discretion when it did not grant a mistrial *sua sponte* as there was no manifest necessity to do so.

*Commonwealth v. Ambrose*, No. 698 EDA 2013 at 5–6 (Pa. Super Dec. 4, 2013). Thus, Petitioner cannot show, for the same reasons the Superior Court identified above, that this Court would have granted a mistrial if trial counsel had overruled Petitioner's wishes and asked for one.

In a similar claim, Petitioner asserts that trial counsel was ineffective for arguing on appeal that this Court should have *sua sponte* declared a mistrial when it was counsel's obligation alone to make a legal determination as to whether to move for a mistrial. For the same reasons discussed *supra*, this claim is also unsupportable.

Petitioner also claims that trial counsel failed to investigate and seek out witnesses. He additionally asserts that trial counsel failed to interview and call alibi witnesses.[3] This claim is without support as the Petitioner bears the burden to show that the witnesses existed and were

---

[3] These two related claims will be jointly addressed.

12

available; counsel was aware of, or had a duty to know of the witness; the witnesses were willing and able to appear; and that the proposed testimony was necessary to avoid prejudice to the Petitioner. *Commonwealth v. Wayne*, 720 A.2d 456, 470 (Pa. 1998); *see also Commonwealth v. Clark*, 961 A.2d 80 (Pa. 2008). For prejudice, the Petitioner must show a reasonable probability that the alleged witness's testimony would have led to a different outcome at trial. *Commonwealth v. Pander*, 100 A.3d 626 (Pa. Super. 2014).

In the case at bar, this Court finds that the Petitioner did not provide trial counsel with any basis on which he should have been aware of any prospective witnesses. At trial, the Petitioner was colliquied and affirmed that he had no witnesses to present. N.T. 12/06/2012 at 84–85. Where a trial court conducts a colloquy in which the Petitioner agrees with counsel not to proffer witnesses, a claim regarding counsel's failure to call witnesses will lack arguable merit. *Commonwealth v. Paddy*, 800 A.2d 294 (Pa. 2002); *Commonwealth v. Pander*, 100 A.3d 626, 642 (Pa. Super. 2014).

Although Petitioner agreed at trial that he had no witnesses to present in his defense, in his *pro se* PCRA Petition and in his response to the 907 Notice of Intent to Dismiss, Petitioner alleges that Shikeda Johnson would testify that police pressured her into providing a statement about the events that followed the shooting. Petitioner also claims that Johnson would testify that she did not provide some of the information in that statement. These allegations, though, are not new to this Court. Defense counsel specifically questioned Johnson about these allegations at trial. N.T. 12/05/2012 at 25–68. Although Johnson initially claimed at trial that she did not provide police one of the passages in her statement, she later clarified that the passage was just not in her exact words. She explicitly, however, denied the allegation that she was compelled by police to provide a statement:

13

DEFENSE COUNSEL: Did [the police] say that they were going to take [your] child from you?

JOHNSON: Yeah. They were threatening me.

DEFENSE COUNSEL: Is that why you gave the statement?

JOHNSON: *No. They asked me questions and I answered them.* But this right here is not what I'm saying. He put extra stuff in here.

DEFENSE COUNSEL: So what's the extra stuff that he put in?

JOHNSON: The big paragraph right here.

DEFENSE COUNSEL: You didn't say any of that?

JOHNSON: No. *He put it in his words. That's not how I put it in mind* [sic].

*Id.* at 57 (emphasis added). As the record reflects, Petitioner's current allegations as to what Johnson would testify to are inconsistent with Johnson's previous testimony. The record also reflects Johnson was subjected to a thorough cross-examination by defense counsel about the circumstances of her police statement. N.T. 12/05/2012 at 25–68. Thus, this claim is without merit.

In addition to Johnson, Petitioner's 907 response also cites an unknown U.S. mail carrier (presumably Elizabeth Gilbert) as a potential witness. He alleges that the mail carrier, who was on the street at the time of the shooting, gave a completely different description of the shooter. This is not the case, however, as Gilbert's description of the suspect was largely consistent with that of the Petitioner. Although Gilbert stated that she could not identify the shooter, she did inform police that the shooter was a black male, between 16 and 20 years of age, approximately 5'6" or 5'7", weighing 160 lbs, wearing a light-colored t-shirt and dark-colored pants. N.T.

14

12/06/2012 at 56. While it appears that the Petitioner is taller than the suspect described by Gilbert, Gilbert was accurate on Petitioner's race, age, and weight. *Id.* at 69–72.[4]

In addition to the accuracy regarding the Petitioner's physical features, Gilbert's description of the shooter's clothing was nearly identical to the description provided by Morton (i.e., dark colored pants and a white t-shirt). Because Gilbert's description of the shooter is largely accurate of the Petitioner and appears to corroborate Morton's testimony, Gilbert's description of the shooter is inculpatory. Thus, Petitioner cannot show he suffered prejudice for counsel's failure to investigate, interview, or call Gilbert as a witness.

Even if Johnson and Gilbert were to offer supportive evidence for Petitioner's claims, Petitioner fails to provide any affidavits from the witnesses to support his claim of their availability, willingness to testify, or the substance of their testimony. *See Commonwealth v. Khalil*, 806 A.2d 415, 422 (Pa. Super. 2002) (holding that "ineffectiveness for failing to call a witness will not be found where a defendant fails to provide affidavits from the alleged witnesses indicating availability and willingness to cooperate with the defense."). Thus, for the foregoing reasons, trial counsel was not ineffective for failing to investigate for, or present, witnesses.

Petitioner alleges that trial counsel was ineffective for not requesting DNA testing on the recovered gun, fired cartridge casings, and magazine. He further alleges that the failure to do so "missed the opportunity to develop objective exculpatory evidence." Petitioner, however, turned down the Commonwealth's offer to test for DNA evidence on the gun at the Commonwealth's expense. N.T. 11/29/2012 at 2–7. Thus, this claim is meritless as Petitioner waived this claim prior to trial.

---

[4] Petitioner claimed in his 229 biographical form to police that he was 6'1", 160 lbs. N.T. 12/06/2012 at 69–72. Petitioner's birthday is Oct 9, 1989, making him 20 years old at the time of the shooting, which occurred on July 1, 2010. *See* CP-51-0008198-2011.

15

On November 29, 2012, the Honorable Jeffrey P. Minehart colloquied the Petitioner about the Petitioner's decision to decline DNA testing of the murder weapon. During the colloquy, Judge Minehart informed the Petitioner that the alleged murder weapon had been discovered, that DNA testing could be performed on the weapon, and that by agreeing to not test for DNA evidence now, the Petitioner waived his right to later claim that possible DNA evidence on the weapon could exonerate him:

> TRIAL COUNSEL: Your Honor, my client wants to forego the DNA testing. He understands I will not argue.
>
> COMMONWEALTH: I would ask that the client be collequied, and I would ask under these circumstances that there be no reference to DNA testing or lack of DNA testing.
>
> THE COURT: I will impose that.
>
> TRIAL COUNSEL: That's fine. That is understood.
>
> . . .
>
> THE COURT: We are going to start a trial and we are going to pick a jury and there has been a discussion here, off the record, that there was a piece of evidence retrieved, I believe, a handgun.
>
> COMMONWEALTH: The murder weapon.
>
> THE COURT: The alleged murder weapon and that there was no DNA test done on that. We discussed with your lawyer continuing the case until a DNA test could be done on it and Mr. Arnold Joseph, your attorney, has advised us that he spoke with you and that you want to go to trial on Monday.
>
> DEFENDANT: Yes.
>
> THE COURT: Is that correct?
>
> DEFENDANT: Yes.
> THE COURT: By going to trial Monday, you are giving up your right to have those tests done; you know that?

THE COURT: There will be no reference made to any lack of testing. In other words, just like other tests such as fingerprints, if the fingerprints were offered to be done or could have been done, in this case, the DNA could have been done and was offered to be done and the decision was made by you, no, I don't need them. It is your decision. It is your trial. You cannot then refer to it in the trial. I will not permit that. Do you understand that?

DEFENDANT: Yes.

THE COURT: Are you doing this on your own free will?

DEFENDANT: Yes.

THE COURT: Any threats or promises made to get you to give up the testing of the DNA?

DEFENDANT: No.

THE COURT: Are you satisfied with Mr. Joseph's representations?

DEFENDANT: Yes.

. . .

COMMONWEALTH: Sir, do you understand in the event that you are convicted, you also waive your right to later claim that there is possible DNA evidence that could exonerate you; in other words, if you were to be convicted, you can't later say I want a new trial because the DNA test was never done?

DEFENDANT: Yes, I understand.

COMMONWEALTH: You understand that?

DEFENDANT: Yes.

THE COURT: Very well, it is on the record that you didn't want it, so that claim will fail.

N.T. 11/29/2012 at 2–7. Because Petitioner stated—on the record—that he understood he waived his right to later claim that possible DNA evidence on the alleged murder weapon could exonerate him, he cannot now claim that counsel was ineffective for failing to have said weapon

17

tested. As the Pennsylvania Supreme Court has held, counsel will not be found ineffective for acting in conformity with a defendant's instructions. *See Commonwealth v. Chmiel*, 889 A.2d 501, 547 (Pa. 2005) (holding that counsel was not ineffective when counsel failed to call a witness that the defendant instructed him not to call); *see also* Rules of Prof. Conduct, Rule 1.2 (which states that a lawyer shall abide by the client's decisions in a criminal trial concerning the objectives of representation). Additionally, Petitioner fails to show what evidence—exculpatory or otherwise—the DNA testing would have discovered. Thus, counsel was not ineffective.

Petitioner next claims that after-discovered or newly discover evidence in the form of a newspaper article asserts that detectives James Pitts and Ohmarr Jenkins committed wide-spread misconduct including, but not limited to, the coaching of witnesses and fabrication of evidence. This claim is again unsupported as Petitioner points to nothing in the article by way of new evidence to warrant a new trial.

First, to be eligible for relief under the Post-Conviction Relief Act, a petitioner must establish by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in 42 Pa.C.S. § 9543(a)(2). The present claim is based on subsection (a)(2)(vi), in which the conviction or sentence resulted from the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced. *Id.*

To prevail on his after-discovered evidence claim, the Petitioner must establish that: (1) the evidence could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) it will not be used solely to impeach the credibility of a witness; and (4) it would likely result in a different verdict if a new trial were granted. *Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008).

18

This test is conjunctive—Petitioner must show by a preponderance of the evidence that each of these factors has been met for a new trial to be warranted. *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010).

Here, because the Petitioner fails to cite any of the new evidence, fails to assert any argument on how the new evidence is relevant to his case, and neglects to show how the purported evidence will affect the outcome of his case, he does not meet his burden of establishing that this new evidence is not merely corroborative or cumulative; will not be used solely to impeach the credibility of a witness; and, would likely result in a different verdict if a new trial were granted.

In addition, the Petitioner also fails to show how the proposed new evidence is producible and admissible. *See Commonwealth v. Castro*, 93 A.3d 818, 825 (Pa. 2014). In *Commonwealth v. Castro*, like here, the appellant referenced a newspaper article that alleged misconduct by several police officers. One of the officers in the article had previously participated in the appellant's case. *Id. at* 820. There, the court stated that, "allegations in the media, whether true or false, are no more evidence than allegations in any other out-of-court situation." *Id.* at 825–26. A "motion [regarding after-discovered evidence] must, at the very least, describe the evidence that will be presented at the hearing. Simply relying on conclusory accusations made by another, without more, is insufficient to warrant a hearing." *Id.* at 827. The *Castro* court emphasized that "[a]bsent identification of the actual testimony, physical evidence, documentation, or other type of evidence to support the allegations or other type of evidence to support the allegations of [the] [o]fficer['s] wrongdoing, we cannot conclude appellee had evidence to offer." *Id.* The court added that to conclude otherwise would be speculation. *Id.*

19

As in *Castro*, the same holds true here. The Petitioner fails to aver in his motion how any of the information read from the article supports his request for a new trial. Petitioner neglects to point to any testimony, physical evidence, documentation, or other type of evidence to support his claim that there was misconduct by the detectives in his case. Like *Castro*, this Court is left to speculate what evidence in the article supports his contention for a new trial. For the foregoing reasons, this claim is unsupported and thus meritless.

**Actual Innocence**

Petitioner also claims that he is entitled to relief on grounds of actual innocence. The *habeas corpus* writ exists as an independent basis for relief only in cases with no remedy under the PCRA. *Commonwealth v. Fahy*, 737 A.2d 214, 224 (Pa. 1999). Claims that can be brought under the PCRA must be brought under that Act. *Commonwealth v. Hall*, 771 A.2d 1232, 1235 (Pa. 2001). No other statutory or common law remedy for the same purpose is available to the Petitioner. *See Hall*, 771 A.2d at 1235 (stating that where a defendant's post-conviction claims are cognizable under the PCRA, the common law and statutory remedies now subsumed by the PCRA are not separately available to the defendant) (*citing Commonwealth v. Peterkin*, 722 A.2d 638, 640–41 (Pa. 1998)).

Instantly, none of Petitioner's claims fall outside the relief of the Post-Conviction Relief Act. 42 Pa. C.S.A. § 9545. Further, absent from Petitioner's motion is any producible or admissible evidence to demonstrate actual innocence. *See Castro, supra.* Accordingly, Petitioner is not entitled to *habeas corpus* relief.

For the foregoing reasons, it is hereby ORDERED and DECREED Petitioner's claims be dismissed.

BY THE COURT,

Barbara A. McDermott, J.

21